FILED
SUPERIOR COURT
OF GUAM

2022 NOV -8 PM 2: 01

CLERK OF COURT

BY:_____

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT CRUZ SAN NICOLAS JR.,<br>DOB: 03/08/1978<br>Defendant. | CRIMINAL CASE NO. CF0293-22<br>GPD Report No. 22-11755<br><br>DECISION AND ORDER<br>RE: COMPETENCY TO BE<br>PROCEEDED AGAINST<br>AND SENTENCED |

## I.    **INTRODUCTION**

This matter came before the Honorable Judge Maria T. Cenzon on September 26, 2022 for a Further Proceedings regarding Robert Cruz San Nicolas Jr.'s (the "Defendant") competency. Assistant Attorney General Matthew Shuck was present on behalf of the People. Assistant Public Defender Peter Sablan was present on behalf of the Defendant. During the hearing, both counsels submitted the issue of Defendant's competency to the Court for its determination. The Court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001 and CVR 7.1(e)(6)(A) of the Local Rules of the Superior Court of Guam. Having duly considered the Defendant's Forensic Evaluations in this case, the parties' oral arguments, and the applicable law, the Court now issues the following Decision and Order, finding that the Defendant is competent to stand trial, rejecting Defendant's plea of Not Guilty By Reason of Mental Illness,

Disease, or Defect, and further finding that the Defendant may have available a "diminished capacity" defense to the charges against him.

## II.  BACKGROUND

The Defendant was indicted by a grand jury for the following charges:

1. AGGRAVATED ASSAULT (As a 3rd Degree Felony) with the SPECIAL ALLEGATION: Possession or Use of a Deadly Weapon in the Commission of a Felony.

2. FAMILY VIOLENCE (As a 3rd Degree Felony) with the SPECIAL ALLEGATION: Possession or Use of a Deadly Weapon in the Commission of a Felony.

Indictment (May 12, 2022).

The Defendant is accused of threatening to burn down his parents' apartment and of lacerating his father's, Robert Cruz San Nicolas Sr.'s (the "Victim"), body and face with a knife to the point of causing severe bleeding. *See* Magistrate's Compl. (May 3, 2022). The Defendant plead not guilty and not guilty by reason of mental disease or defect pursuant to 9 GCA Chapter 7, Article 2. Notice of Plea (May 17, 2022). The Defendant requested a forensic examination. *Id.* The request was granted by Magistrate Judge Benjamin Sison at Defendant's arraignment. *See* Arraignment Hr'g at 2:14 PM (May 20, 2022); Order for Forensic Evaluation (May 23, 2022).

The Defendant was examined by Juan M. Rapadas, Ph.D., an expert clinical psychologist at Client Services and Family Counseling (CSFC) on June 20, 2022. *See* Forensic Evaluation (June 30, 2022). Dr. Rapadas opined that Defendant is "currently competent to be proceeded against and to be sentenced based on the clinical interview, observations of Mr. San Nicolas, his self-report, review of GBHWC records, police records, and current mental status which would be characterized as marginally stable at this time." *Id.* at 7. However, Dr. Rapadas noted that "[o]ne hour into the interview, [the Defendant] wanted to stop the exam and said would not speak any

more about his case unless his lawyer was present." *Id.* at 2. As a result, his counsel requested a second evaluation. Hr'g Tr. at 9:25 AM (July 18, 2022). The People did not oppose. *Id.* at 9:27 AM, 9:29 AM. The Court ordered an assessment by Guam Behavioral Health and Wellness Center (GBHWC) and a second evaluation. *Id.* at 9:35 AM; Order Re. Second Forensic Evaluation (July 27, 2022); Order Re. Intake and Referral for Assessment by GBHWC (July 27, 2022).

The second evaluation was conducted by Kirk Bellis, D.O on August 23, 2022. *See* Second Forensic Evaluation (Aug. 25, 2022) Dr. Bellis opined that:

> The defendant's mental state at this time does not preclude the defendant from being found competent. With this mental state the defendant can, for the most part, understand the nature of the proceedings and should be able to assist and cooperate with his counsel but may require a lot more effort such as one might exert working with a juvenile case. He should be able to follow the evidence but he may need to check in with his attorney to ensure that he is getting the gist of what is being said. He should be able to participate in his defense to the best of his ability although to a limited degree. I think he is marginally competent.

*Id.* at 5. During the hearing to discuss the second forensic evaluation, defense counsel advised the Court of their position that Defendant was not competent and asked the court to make a legal determination on Defendant's competency based on the two forensic reports. Hr'g Tr. at 9:43-9:44 AM (Sept. 26, 2022). The People disagreed regarding defense counsel's position on Defendant's competency, but agreed that the Court should review the reports and make a legal determination. *Id.* at 9:45 AM.

### III. DISCUSSION

"[A] trial court can properly make a determination as to competency solely on the basis of [forensic] reports . . . ." *People v. Hemsing*, 2012 Guam 19 ¶ 12. Guam law dictates that "[a] defendant is incompetent to be proceeded against in a criminal action if, as a result of mental

illness . . . he is unable (1) to understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to participate in his defense." 9 GCA § 7.37(a)(1)-(4). The statute jealously guards a defendant's right to a fair trial by upholding the renowned United States Supreme Court prohibition. *See Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

### 1. The Defendant is competent to be proceeded against and sentenced.

Defense counsel posits that Defendant lacks capacity to stand trial partly because Dr. Bellis found the Defendant "affected to a certain degree" and only "marginally competent." Hr'g Tr. at 9:43 AM (Sept. 26, 2022). Defense also alluded to Defendant's "traumatic brain injury." *Id.* It is true that Dr. Bellis found the Defendant "marginally competent" and that Dr. Bellis acknowledged the Defendant "was shot in the head and has after effects secondary to that injury to this day." Second Forensic Report at 5. Some of the lingering injuries described by Dr. Bellis is that the Defendant is "partially paralyzed on the left side of his body" and suffers from a speech impediment. *Id.* at 4. Despite Defendant's physical limitations, Dr. Bellis determined that "[h]is thought content did not reveal any delusional thinking." *Id.* at 5. Indeed, Defendant appeared to be lucid and highly cognizant of at least his current predicament. When asked by Dr. Bellis to define the role of a judge, Defendant responded that it was to "interpret the law." *Id.* at 2. The role of the prosecutor, he stated, was to "prosecute." *Id.* at 2-3. As for his lawyer's role, the Defendant stated it was to "represent me in court." Dr. Rapadas reached a similar finding. *See* Forensic Evaluation at 7 ("As he presents clinically at this assessment, he appeared to know the general legal roles of his attorney, the prosecutor, the judge, and the jury role."). The Defendant

further demonstrated his rationality when he expressed the desire that his lawyer help him so that he "could serve his time at Guam Behavioral Health instead of imprisonment." *Id.* at 3. Defendant's recognition of the parties and of his aspirational resolution of the case indicate not only that he understands the nature of the proceedings, but that he is also capable of participating in his defense and cooperating with his counsel. It is also noteworthy that the Defendant responded affirmatively when Dr. Bellis asked if he understood both the evidence that supported his innocence and guilt. *Id.* His apparent understanding of the evidence directly speaks to his ability to follow the evidence.

The defense seems to reject the finding by both experts that Defendant is competent partly on the grounds that Dr. Bellis only found him "marginally" competent instead of unequivocally finding the Defendant competent. Such argument is ultimately unpersuasive. This is because a practitioner need not find a Defendant in perfect mental capacity. Instead, "[g]enerally the '[t]est for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a *reasonable* degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *People v. Guerrero*, 2001 Guam 19 ¶ 33 (quoting *Boag v. Raines*, 769 F. 2d 1341, 1342 (9th Cir. 1985)). Ultimately, Dr. Bellis concluded that that Defendant is competent. Second Forensic Evaluation at 5 ("The defendant's mental state at this time does not preclude the defendant from being found competent.") Dr. Rapadas agreed. Forensic Evaluation at 7 ("Taken all data in total, in my opinion, Mr. San Nicolas is currently competent to be proceeded against and to be sentenced . . . .").

Finding that the Defendant can at least to a reasonable degree "(1) understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to

participate in his defense," the Court joins the experts and concludes that the Defendant is competent to stand trial and sentencing pursuant to 9 G.C.A. § 7.37(a)(1)-(4).

### A. While Defendant is competent, he plausibly holds a diminished capacity defense.

The second leg to defense's argument on why the Defendant is incompetent is based on Dr. Bellis' statement that the Defendant had an inability to control his actions. *See* Hr'g Tr. at 9:43 AM (Sept. 26, 2022). The full text of Dr.Bellis' statement is as follows:

> The defendant's mental state would not preclude the defendant from having had substantial capacity to understand what the defendant was doing or to control the defendant's actions. However, on the basis of history and from the reports and examination is it possible that the defendant was affected by this mental state at the time of the alleged offense to a degree. However, this mental state is not constant, raising the question of the effect at the time of the alleged offense. Many collaborating reports been[sic] considered in substantiating this. On the basis of this it is highly likely that the defendant was able to distinguish right from wrong within our culture but may not have had the capacity to have a state of mind to have specific cognitions necessary to commit the alleged offense. In this sense, the defendant may have had "a diminished capacity" to control his actions.

Second Forensic Report at 5-6.

Thus, as referenced by Dr. Bellis, to the extent Defendant's state of mind is at question, it speaks not to his competency but rather an available defense. "Guam's diminished capacity doctrine is set forth in 9 GCA § 7.19 and provides that '[e]vidence that the defendant suffered from mental illness, disease or defect is admissible whenever it is relevant to prove *the defendant's state of mind.*' " *People v. De Soto*, 2016 Guam 12 ¶ 23 (quoting 9 GCA § 7.19) (emphasis added). While it does not "absolve a defendant from criminal responsibility," it does allow "a criminal defendant to introduce evidence of a mental disease, defect or abnormality during trial to show that the defendant, although legally sane, was not capable of forming the necessary mental state required of the crime for which he is charged." *People v. Jung*, 2001 Guam 15 ¶¶ 30-31. A

successful deployment of the defense can often lead "to reduce the defendant's guilt to a lesser offense." *Id.* at ¶ 31 (citing *State v. Sessions*, 645 P. 2d 643, 644 (Utah 1982)). Indeed, Dr. Bellis stated that "[i]n this sense, the defendant may have had 'a diminished capacity' to control his actions" and later referred to it as "a mitigating factor." Second Forensic Evaluation at 6.

Dr. Rapadas similarly opined that "it is plausible that [Defendant] may have had a diminished capacity that may have impaired and somewhat compromised his judgment and accountability, and may have resulted in aggressive and impulsive behaviors and/or a 'rationality impairment' at the time of the crime." Forensic Evaluation at 11. Dr. Rapadas reasoned that "[e]xplosive, extreme and out of proportion anger reactions can be a prominent associated symptom of Bipolar disorder and TBI especially if the brain emotion center (amygdala) was partially damaged." *Id.* Thus, the findings by Dr. Bellis demonstrated the Defendant is entitled to a diminished capacity defense but does not make him per se incompetent.

## IV.   CONCLUSION

The defendant has undergone two different forensic evaluations by two different practitioners. Both practitioners reached the same conclusion: that the Defendant was competent to be proceeded against and sentenced but that the Defendant plausibly possesses a diminished capacity defense. The Court agrees with the experts. For the reasons started above, the Court makes the following findings of fact and conclusions of law:

1. Defendant is currently competent to stand trial and possesses the mental competency "(1) to understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to participate in his defense." 9 G.C.A. § 7.37(a)(1)-(4). The Defendant's case will, therefore, not be transferred to Mental Health Court.

2. Defendant may present any diminished capacity defense at the trial of this matter.

3. A Further Proceedings hearing shall be held on _November 29, 2022_ at _9am_ .m.

SO ORDERED this _NOV. 0 8 2022_

HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam